**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL CANFIELD** | **CIVIL ACTION** |
| **Plaintiff** | |
| **v.** | **NO. 13-cv-03484** |
| **MOVIE TAVERN, INC.** | |
| **Defendant.** | |

### MEMORANDUM OF LAW RE DEFENDANT'S MOTION TO DISMISS

Baylson, J.                                                     December 12, 2013

## I.      FACTS[1]

Plaintiff, Michael Canfield, was employed by Defendant, Movie Tavern, Inc., from April 1, 2011 until he was fired on March 21, 2012.  Defendant is a Pennsylvania corporation in the business of showing movies and providing dining options for patrons during movie showings.

Plaintiff alleges that he was wrongfully discharged by Defendant in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"). 43 P.S. § 951 *et seq.*  Plaintiff's Amended Complaint alleges that he injured his back on November 26, 2011 while at work as a Kitchen Manager. ECF 7 at ¶ 12. Following his injury, Plaintiff sought out medical treatment at the emergency room and was ordered to take several days off from work to rest. ECF 7 at ¶ 13. On December 6, 2011, Plaintiff followed up with a physician's assistant that was a participating member of Defendant's medical benefits plan and was released to return to work with no restrictions. ECF 7 at ¶ 15.  On

---

[1] These factual allegations are taken from the Amended Complaint.  They are presumed true for the purpose of evaluating Defendant's Motion to Dismiss. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

December 22, 2011, Plaintiff underwent an MRI which revealed a herniated disc in Plaintiff's lower back. ECF 7 at ¶ 17. As a result, Plaintiff was sent to Defendant's occupational doctor. Defendant's occupational doctor ordered work restrictions limiting Plaintiff to "light duty." ECF 7 at ¶ 21.

Defendant placed Plaintiff on a leave of absence until he could return to work without restrictions. ECF 7 at ¶ 32.  Plaintiff thereafter began receiving workers' compensation benefits. ECF 7 at ¶ 29. On February 23, 2012, Plaintiff was cleared to return to work without restrictions. ECF 7 at ¶ 33.  Within days of returning to work, however, Plaintiff re-aggravated his injury and was again restricted to "light duty." ECF 7 at ¶ 38.  Plaintiff informed Defendant of his re-injury and that he would be seeking treatment for his disability. ECF 7 at ¶ 35. On March 17, Plaintiff saw the physician's assistant from Defendant's medical benefits plan, who reinstated Plaintiff's light duty restrictions. ECF 7 at ¶¶ 37-38. Defendant was again unable to accommodate these restrictions, and informed Plaintiff's Workers' Compensation Case Manager of its inability to accommodate. ECF 7 at ¶ 39. On March 19, 2012, Plaintiff was asked to attend a meeting on March 21, 2012 with his managers. ECF 7 at ¶ 40. On March 20, 2012, Plaintiff's workers' compensation benefits were reinstated. ECF 7 at ¶ 41.  The next day, Plaintiff attended the aforementioned meeting and was fired. ECF 7 at ¶¶ 40-43. The reason given for his termination was that he had discriminated against Defendant's Hispanic employees. ECF 7 at ¶ 44.  Plaintiff alleges that Defendant's reason for firing him is a fabrication and pretext, and that he was actually fired because of his disability and claims for workers' compensation. ECF 7 at ¶¶ 45-46.

## II.    DISCUSSION

Plaintiff's Amended Complaint alleges seven causes of action.  Plaintiff first claims violations of the ADA for failure to accommodate, failure to engage in an interactive process,

and retaliatory firing.  Plaintiff brings identical claims under the PHRA.  Plaintiff also claims wrongful termination in retaliation for his workers' compensation claims in violation of Pennsylvania common law.

In response, Defendant filed a Motion to Dismiss claiming that Plaintiff waived his claims for damages arising from his workplace injury by signing a Compromise and Release ("C&R") for Plaintiff's workers' compensation claim.  Second, Defendant contends that Plaintiff is not disabled as defined under the ADA, and therefore his claims fail as a matter of law.  Third, Defendant argues that Plaintiff's retaliation claims must be dismissed because Plaintiff failed to plead a causal relationship between his filing a workers' compensation claim and the termination of his employment.  Finally, Defendant seeks to strike Plaintiff's claim for punitive damages under the PHRA.[2]

For the following reasons, Defendant's Motion to Dismiss should be denied.

### A.  Plaintiff Did Not Waive His Current Claims in the Compromise and Release

Defendant argues that Plaintiff's execution of a C&R releasing Plaintiff's workers' compensation claim waived Plaintiff's right to pursue a disability discrimination claim against Defendant based on the same workplace injury.  In doing so, Defendant relies heavily on *Hoggard v. Catch, Inc.*, No. 12-4783, 2013 WL 3430885 (E.D. Pa. July 9, 2013), in which the district court held that plaintiff had waived his ADA claim by executing a Compromise and Release of his workers' compensation claim.  *Hoggard*, however, does not stand for the proposition that any C&R releasing a workers' compensation claim constitutes a waiver of all ADA claims arising out of the same injury.

---

[2]  In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Plaintiff explained that he is not seeking punitive damages under the PHRA. Therefore, Defendant's claim regarding punitive damages is no longer at issue. ECF 10 at 20.

The *Hoggard* decision turns on an examination of the specific language of the release.  As a result of this examination, the district court in *Hoggard* determined that the language in the C&R waived all of the plaintiff's claims arising out of his workplace injury. The district court relied upon the following language from the plaintiff's C&R to reach that conclusion:

- [The C&R] completely resolves *all claims and issues* arising out of Claimant's 05/11/2011 injury.

- Claimant understands that in exchange for any and all indemnity, medical and/or specific loss benefits arising out of his 05/11/2011 work injury, this settlement . . . is a final one which *forever ends his entitlement to any and all such benefits* for the injuries of 05/11/2011.

- Claimant understands that this is a final settlement, and once approved by the Court, he *forever releases* . . . [Defendant] . . . *for any additional benefits* arising from the 05/11/2011 work injury.

*Hoggard*, 2013 WL 3430885, at *3 (emphasis added).  The district court found that this language was so expansive that it clearly indicated the parties' intent to release the defendant of any and all liability arising out of the plaintiff's workplace injury.

The C&R in this case is different.  Here, the C&R indicates that Plaintiff only agreed to release Defendant's liability for workers' compensation claims arising out of Plaintiff's back injury. There is no reference to releasing ADA or PHRA claims anywhere in the C&R. Moreover, there is no general, all-encompassing language similar to the C&R in *Hoggard* that would include Plaintiff's ADA and PHRA claims.  Unlike in *Hoggard*, the language from Plaintiff's C&R clearly indicates that Plaintiff released Defendant's liability only for Plaintiff's workers' compensation claim:

> This agreement resolves any and all *workers' compensation claims*, including but not limited to scarring and specific loss, arising out of the claimant's employment with Movie Tavern Partners.

4

ECF 8-1 at 1 (emphasis added).  The C&R was exclusively limited to Plaintiff's workers' compensation claims.  Accordingly, Defendant's waiver argument fails.

### B.  Plaintiff Has Sufficiently Pled a Disability Under the ADA.

The ADA makes it unlawful for an employer to discriminate against an employee on the basis of his disability.  In order to state a valid claim under the ADA, a plaintiff must establish that he (1) has a disability; (2) is qualified to perform the job; and (3) has suffered adverse employment action because of that disability.  *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006).  Defendant only challenges that Plaintiff has a disability as defined under the ADA.

In 2008, Congress passed the ADA Amendments Act ("ADAAA"), which substantially modified the terms of the ADA "to make it easier for people with disabilities to obtain protection" under the statute.   29 CFR §1630.1(c)(4).  The alleged discriminatory activity complained of occurred on March 21, 2012.  ECF 7 ¶¶ 42, 43.  The ADAAA became effective on January 1, 2009; therefore, the ADAAA governs this case.  42 U.S.C. §12102.  The Equal Employment Opportunity Commission ("EEOC") finalized its regulations interpreting the ADAAA on March 24, 2011; these regulations therefore guide the Court's analysis.  29 C.F.R. § 1630.  Where the ADAAA leaves terms undefined, EEOC regulations defining these terms are afforded *Chevron* deference where those terms are ambiguous.[3]  *See Deane v. Pocono Medical Center*, 142 F.3d 138, 143 n.4 (3d Cir. 1998) ("Because the ADA does not define many of the

---

[3]  Curiously, in its Opposition to Defendant's Motion to Dismiss, Plaintiff asserts that the EEOC regulations had been proposed but were not yet finalized by the time of Plaintiff's termination and therefore should be afforded only *Skidmore* deference.  *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) (looking to regulations for guidance in interpreting a statute commensurate with their power to persuade).  Plaintiff is mistaken—the EEOC regulations had been finalized for over a year by the time Plaintiff was terminated and therefore are the relevant regulations to be considered here.

pertinent terms, we are guided by the Regulations issued by the [EEOC] to implement Title I of the Act.").[4]

The ADA defines "disability," with respect to an individual, as

(A)     a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)     a record of such an impairment; or

(C)     being regarded as having such an impairment.

42 U.S.C. § 12102(1). The ADAAA did not change the definition of disability, but rather, changed the way in which this definition was to be interpreted and applied.  *See id.* § 12102(3)(B) (precluding individuals from "being regarded as having" an impairment if the impairment is transitory under § 12102(1)(C), but not precluding transitory impairments from qualifying as a disability under § 12102(A) or (B)).  In doing so, the ADAAA made it easier for individuals to qualify as disabled.

In light of §12102(1)'s definition, the EEOC established rules of construction to apply when determining whether an impairment substantially limits a major life activity.  *See* 29 CFR §1630.2(j)(1)(i) ("The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard."); 29 CFR §1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); 29 CFR §1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").

With these principles in mind, Plaintiff has adequately pled a disability under the ADAAA. Plaintiff alleges the herniated disc that he sustained at work, in addition to prior herniated discs,

---

[4]  While the Third Circuit in *Deane* was referring to EEOC regulations implementing the pre-Amendments Act ADA, the principles of *Chevron* deference apply with equal force to the ADAAA.

spinal osteoarthritis, and degenerative disc disease, constitute a physical impairment that substantially limits one or more major life activities.  ECF 7 at ¶¶ 17, 18.  Defendant counters by arguing that Plaintiff's injury was transient and non-permanent, rendering his condition insufficient to establish that Plaintiff was disabled as defined by the ADA. Defendant's argument, however, applies an outdated ADA standard.

Defendant's briefing cites to pre-amended ADA standards and case law.  Defendant relies heavily on *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000) and *Reifer v. Colonial Intermediate Unit 20*, 462 F.Supp.2d 621 (W.D. Pa. 2006) to support its argument regarding the transient nature of Plaintiff's injuries.  The Third Circuit decided both *Marinelli* and *Reifer* before the passage of the ADAAA in 2008.

Defendant properly states that Plaintiff must allege that his disability significantly limits one or more major life activities—defined by the EEOC as substantially limiting a major life activity as compared to the average person or "most people in the general population."  29 CFR §1630.2(j)(ii).[5]  Defendant then incorrectly states, due to its reliance on pre-ADAAA cases, that transient, non-permanent conditions of short duration do not establish a disability that substantially limits a major life activity.  EEOC regulations interpreting the phrase "substantially limits" contemplate recognizing an impairment that can be classified as transient or lasting fewer than six months as a disability.  29 CFR §1630.2(j)(1)(ix) (explaining that such disabilities can be substantially limiting within the definition of disabled).  As a result, the purported transient nature of Plaintiff's injuries is not relevant to the analysis.  The proper analysis simply asks whether Plaintiff's injuries substantially limit a major life activity.

---

[5]  Because the substantially limiting standard was not affected by the ADAAA, Defendant properly stated this standard despite relying on pre-ADAAA cases and regulations.

Plaintiff points out that his doctors restricted him from performing work that required him to bend over, twist his torso, or lift any weight over ten pounds.  ECF 7 at ¶ 22.  As a result, Plaintiff contends that he has sufficiently pled a substantial limitation to major life activities. ECF 10 at 16.  Whether an individual is substantially limited in a major life activity is a question of fact. *Williams v. Philadelphia Hous. Auth. Police Dep't.*, 380 F.3d 751, 763 (3d Cir. 2004). The ADAAA defines major life activities as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, *lifting, bending,* speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A) (emphasis added).  Accordingly, Plaintiff's restriction from performing work that requires bending, twisting, or lifting any weight over ten pounds constitutes a major life activity.

Furthermore, Plaintiff has alleged an impairment that is "substantially limiting" under the statute.  EEOC Regulations specifically note that an individual that suffers from an impairment that results in a lifting restriction, such as Plaintiff's, is substantially limited in the major life activity of lifting.  29 CFR §1630.2(j)(1)(ix) (App.) ("[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability.").  EEOC regulations clearly indicate that Plaintiff has sufficiently alleged that he is substantially limited in the major life activity of lifting and thus qualifies as disabled under the ADAAA.

### C.  Plaintiff Has Sufficiently Pled a Disability Under the PHRA.

 Despite the parties' contentions, the PHRA does not follow the same standards and analysis as the ADAAA.  Prior to the ADAAA, claims under the ADA and PHRA were analyzed together because the PHRA and ADA definitions of terms such as "handicap or disability" were

substantially similar.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Consequently, the district court properly treated [Plaintiff's] claims as coextensive with his ADA . . . claims. . . .") The same cannot be said for the PHRA and the ADAAA.  Although the ADAAA changed the standards for determining the existence of a disability, "the PHRA has not been similarly amended, necessitating separate analysis of Plaintiff's ADA and PHRA claims."  *Szarawara  v. County of Montgomery*, No. 12-5714, 2013 WL 3230691, *2 (E.D. Pa. June 27, 2013); *Deserne v. Madlyn and Leonard Abramosn Center for Jewish Life, Inc.*, No. 10-03694, 2012 WL 1758187, *3, n. 3 (E.D. Pa. May 17, 2012) ("To date, Pennsylvania has not made parallel amendments to the PHRA or the regulations implementing the PHRA.").  Accordingly, Plaintiff's PHRA claims require separate analysis.

In order to establish a *prima facie* case of discrimination under the PHRA, "a plaintiff must establish that he is a 'qualified individual' with a 'disability' who suffered an adverse employment action 'because of that disability,'"  *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (quoting *Turner*, 440 F.3d at 611).  Defendant argues that Plaintiff is not disabled under the PHRA.

In order to establish a disability under the PHRA, a plaintiff must show that he is more than merely impaired; he must demonstrate:

(1)     an actual mental or physical impairment that substantially limits one or more major life activities;

(2)     a record of such impairment; or

(3)     that his employer regarded him as having a disability.

*Macfarlan*, 675 F.3d at 274.  In this case, Plaintiff alleges that he is restricted in the major life activity of lifting, as evidenced by his doctor's restriction limiting Plaintiff from performing work that required him "to bend over, twist his torso, or lift any  weight over 10 pounds."  ECF 7

at ¶22.  The EEOC regulations interpreting the pre-amended ADA indicated that "lifting" is a major life activity.  *Marinelli*, 216 F.3d at 363.  As a result, the pertinent inquiry here is whether Plaintiff's injury substantially limits his ability to lift.  Pre-ADAAA EEOC regulations indicate that Plaintiff has sufficiently pled that his injury is substantially limiting to qualify as disabled under the pre-amended ADA and thus the PHRA.

The term "substantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree."  *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002)). As a result, an impairment is considered substantially limiting only if the Plaintiff is:

> (1)  Unable to perform a major life activity that the average person in the general population can perform; or
>
> (2)  Significantly restricted as to the condition, manner, and duration under which [he] can perform a particular major life activity as compared to the condition, manner, and duration under which the average person in the general population can perform that same major life activity.

*Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 782-83 (3d Cir. 1998) (citing pre-ADAAA EEOC regulation 29 C.F.R. §1630.2(j)(1)(i)-(ii)).  In making this determination, courts should consider:

> (1)  The nature and severity of the impairment,
>
> (2)  The duration or expected duration of the impairment, and
>
> (3)  The permanent or long term impact of or resulting from the impairment.

*Mondzelewsky*, 162 F.3d at 783 (quoting pre-ADAAA EEOC regulation 29 C.F.R. §1630.2(j)(2)(i)-(iii)) (internal quotations omitted).

As Defendant correctly points out, the Third Circuit has held that "a ten-pound [lifting] limitation . . . does not render [Plaintiff] sufficiently different from the general population such

10

that he is substantially limited in his ability to lift." *Marinelli*, 216 F.3d at 364.  Defendant's

reliance on *Marinelli*, however, is misplaced at this stage in the litigation.  As the Third Circuit

pointed out in *Fowler v. UMPC Shadyside*,

> The claims at issue in *Marinelli* and the cases we cited therein were disposed of at
> either the summary judgment or the judgment as a matter of law stage of the
> litigation. . . At [the motion to dismiss] stage of the litigation, the District Court
> should have focused on the appropriate threshold question—namely whether
> [Plaintiff] *pleaded* she is an individual with a disability . . . [Plaintiff] is not
> required, at this early pleading stage, to go into particulars about the life activity
> affected by her alleged disability or detail the nature of her substantial limitations.
> [Plaintiff's] complaint identifies an impairment…and alleges that such
> impairment constitutes a disability . . . Of course, [Plaintiff] must ultimately prove
> that she is substantially limited in a recognized major life activity to prevail on her
> claim. At the pleading stage, however, [Plaintiff's] allegation regarding disability
> is sufficient.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3d Cir. 2009) (emphasis in original).

Accordingly, Plaintiff in this case has adequately pled an impairment that constitutes a disability.

ECF 7 at ¶¶ 17-22.  This is sufficient to survive Defendant's motion to dismiss Plaintiff's PHRA

claims.

### D.  Plaintiff Has Sufficiently Pled a Claim for Retaliation Under the Workers' Compensation Act.

Under Pennsylvania Law, an at-will employee may not be discharged in retaliation for filing

a workers' compensation claim.  *Shick v. Shirley Lumber*, 552 Pa. 590, 604 (1998).  The

Pennsylvania Supreme Court has not yet established the elements of a workers' compensation

retaliation claim, but the Third Circuit has predicted that the Pennsylvania Supreme Court would

apply the same elements that are used to analyze retaliation claims in the framework of Title VII

of the 1964 Civil Rights Act.  *Theriault v. Dollar General*, 336 Fed.Appx. 172, 175 (3d Cir.

2009); s*ee also Szostek v. Drexel University*, No. 12-2921, 2013 WL 4857989, *15 (E.D. Pa.

Sept. 11, 2013).

In order to establish a *prima facie* case for retaliation in the Title VII context, a plaintiff must establish the following elements: (1) Plaintiff engaged in activity protected by Title VII; (2) plaintiff suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the employer's adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). The third element, causation, can be established by alleging an "unusually suggestive proximity in time between the protected activity and the adverse action. . . ." *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) ("the timing of the alleged retaliatory action must be 'unusually suggestive' of a retaliatory motive before a causal link will be inferred.").

Defendant only disputes that Plaintiff alleged a causal connection between his filing for workers' compensation benefits and being fired.

In attempting to establish the required temporal proximity, Plaintiff alleged that he reinjured his back and was placed on light duty restrictions for a second time on March 17, 2012.  ECF 7 at ¶¶ 37, 38.  As a result, Plaintiff alleged that his workers' compensation benefits were reinstated on March 20, 2012. ECF 7 at ¶ 41. Plaintiff then alleged that he was fired the very next day after this reinstatement of benefits, thereby establishing the requisite "unduly suggestive" temporal proximity between his filing for workers' compensation and being terminated. ECF 7 at ¶¶ 41-43.

Defendant contends that the proper time period is not one day, but rather, 4 months. Defendant notes that Plaintiff first filed a claim for workers' compensation benefits at the end of November 2011.  ECF 8 at 10.  Defendant also points out that Plaintiff was encouraged to seek workers' compensation benefits for his initial, November 26, 2011 injury, which were granted without opposition or resistance from Defendant. ECF 8 at 10.  When Plaintiff was cleared to

return to work without restrictions, Plaintiff alleges he re-injured himself, which required more time out of work and reinstated Plaintiff's workers' compensation benefits.  ECF 8 at 10. Defendant argues that Plaintiff's termination occurred after Plaintiff's reinstatement of workers' compensation benefits, which occurred four months after the initial filing for workers' compensation benefits.  ECF 8 at 10.  According to Defendant, this four-month gap is too large to establish the required temporal proximity.

A one-day gap between filing for workers' compensation and being fired would be sufficient to establish an "unduly suggestive" temporal proximity sufficient to satisfy the causation prong. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (a causal link was established where "discharge followed rapidly, only two days later, upon [Defendant's] receipt of notice of [Plaintiff's] EEOC claim.").  However, a four-month gap between Plaintiff's claiming workers' compensation benefits and his termination would be insufficient to establish the requisite temporal proximity.  *Williams v. Philadelphia Hous. Auth. Police Dep't.*, 380 F.3d 751, 760 (3d. Cir.2004) (holding that "over two months" between protected activity and being terminated "is not so close as to be unduly suggestive.").

The Court, however, need not decide which date constitutes the controlling start date for Plaintiff's claim.  That matter is a question of law to be decided at summary judgment.  Plaintiff has plausibly alleged that the gap between his protected activity and being terminated was one day.  This is sufficient to plead causation.

## III.    CONCLUSION

In light of the foregoing analysis, Defendant's Motion to Dismiss Plaintiff's Amended Complaint will be denied.

O:\CIVIL 13\13-3484 canfield v. movie tavern\13-cv-3484 Memo of Law Denying D's Mot to Dismiss.docx